# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MITCHEL NEWBERRY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0316-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 7 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 19 and 20).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted;

Step 4     If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

| | | |
|---|---|---|
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on May 28, 2013. See CAR 21.[1] In the application, plaintiff claims disability began on April 19, 2011. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 16, 2015, before Administrative Law Judge (ALJ) Cecilia LaCara. In an October 15, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: medium work, except the claimant is limited to no more than frequent climbing of ramps and stairs, stooping, and crouching, and the claimant must avoid concentrated exposure to extreme cold, excessive vibration, and hazardous machinery;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 23-29.

After the Appeals Council declined review on January 23, 2017, this appeal followed.

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in assessing his status post meningitis as non-severe; (2) the ALJ failed to state sufficient reasons for finding his testimony and statements not credible; and (3) the ALJ failed to consider the effects of all non-exertional limitations when assessing plaintiff's residual functional capacity.

/ / /

/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on August 15, 2017 (Doc. 12).

While plaintiff does not raise any arguments concerning the ALJ's evaluation of the medical opinions offered in this case, the ALJ's evaluation of the opinion evidence is nonetheless instructive. The ALJ primarily relied on the opinion of Dr. Sunde:

> As for the opinion evidence, the opinion of Chester Sunde, Psy.D (Ex. 8F) is granted significant weight. Dr. Sunde found the claimant limited in areas regarding concentration, persistence, and pace due to symptoms of depression associated with the claimant's adjustment disorder arising from life stressors and combined lingering effects of his various sever and non-severe impairments. This is reasonable and consistent with the longitudinal record and the claimant's complaints. . . .

CAR 27.

The ALJ found the opinions of consultative reviewing psychologists, Drs. Foster-Valdez and VanHoose, to be consistent with Dr. Sunde's opinion. See id. at 27-28 (citing Exhibits 4A and 8A).

The ALJ gave "partial weight" to the opinions of Dr. Kalman: "An opinion by Les Kalman, M.D. (Ex. 9F) is granted partial weight as to no limits in ADL's [activities of daily living] or social function, however, as per Dr. Sunde's findings and the claimant; primary care records he does have some mild limitation in concentration, persistence, and pace due to his adjustment disorder/depression and pain." Id. at 27. The ALJ also gave "partial weight" to the opinions of consultative reviewing physicians, Drs. Jone and Amon, regarding plaintiff's physical capabilities. See id. at 28. As Drs. Jone and Amon, the ALJ concluded the doctors failed to "place appropriate environmental limitations due to the claimant's lingering symptoms of dizziness status post-meningitis." Id.

Finally, the ALJ gave the opinion of consultative examining physician, Dr. Corkill, "little weight." See id. The ALJ stated:

> The opinion of consultative examiner Dr. Corkill (Ex. 10F) is given little weight; it does not adequately consider the claimant's combined serve [sic] and non-severe impairments that would reasonably affect his exertional and postural functional abilities, in addition Dr. Corkill did not consider the claimant's pain.

Id.

/ / /

/ / /

5

### A.  **Severity Determination**

At Step 2, the ALJ determined that plaintiff's degenerative disc disease impairment is severe. See CAR 23-24. To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Plaintiff argues the ALJ erred in determining his impairments status post meningitis are not severe. In this regard, the ALJ stated:

> The claimant has also exhibited symptoms of or been diagnosed with status post meningitis, hypertension, hyperlipidemia, diabetes mellitus, bilateral wrist neuropathy, and obesity (Ex. 1F, 2F, 3F, 4F, 6F, 12F, 14F, 20F). The objective medical evidence does not indicate that these impairments have caused significant vocational limitations for at least 12 consecutive months, therefore they are deemed non-severe.

CAR 23.

According to plaintiff, the ALJ erred in concluding his status post-meningitis is not severe for failure to satisfy a 12-month duration requirement because "primary care physician's treatment

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

notes in June 2012 (more than 12 months later) unambiguously reflect that Mr. Newberry's meningitis residual remained unresolved. AR 630."

Plaintiff's argument is unpersuasive. As the ALJ noted, the relevant inquiry at Step 2 is whether an impairment has more than a minimal effect on the claimant's ability to work. See SSR 85-28; see also Yuckert, 841 F.2d at 306 (adopting SSR 85-28). Evidence that meningitis residuals persist does not inform this inquiry because it is not evidence of plaintiff's ability to work in light of such residuals. Plaintiff has failed to meet his burden with respect to the severity of meningitis residuals.

**B.     Credibility Assessment**

At Step 4, the ALJ assessed plaintiff's credibility in determining his residual functional capacity. See CAR 25-27. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or

7

> another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the

workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ summarized plaintiff's statements and testimony as follows:

> In applying for disability benefits, the claimant has alleged that he is unable to sustain basic work activities on a regular and continuing basis because of his impairments. On the function report filled out by the claimant in conjunction with his application, the claimant contended that his symptoms affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, remember, complete tasks, concentrate, understand, and get along with others (Ex. 12E, pg. 6).
>
> * * *
>
> At the hearing, the claimant testified that he gets lightheaded and dizzy from the lingering effects of meningitis. He testified that he does yard work for his mother, including lawn mowing, weed eating, and watering. He testified that uses a riding lawnmower, and after 45 minutes he has to stop due to neck pain and fatigue. The claimant testified that he continues to use marijuana for pain, and continues to smoke cigarettes.
>
> CAR 25, 27.

The ALJ then held:

> The claimant's allegations are not fully credible. The longitudinal medical evidence of record shows that despite the presence of degenerative disc disease he has been asymptomatic for the majority of the period at issue and he has never received narcotics, physical therapy, or other treatment for his degenerative disc disease that would suggest he is significantly functionally impaired. The claimant has not followed the medical advice of his treating providers. The claimant is able to perform a broad array of physical cavity [sic] such a chopping wood, perform self-care, stand, walk, and yard work that are not consistent with his complaints of incapacitating pain. For all of these reasons, the claimant's allegations are not fully credible.
>
> Id. at 27.

///

///

9

Regarding the longitudinal medical record, the ALJ noted the following:

| | | |
|---|---|---|
| November 2012 | | The claimant presented at Mercy Medical Center with complaints of "neck pain after extensive truck driving several months prior." On examination, the claimant demonstrated no tenderness on palpation and he had full range of motion of the cervical spine. The doctor noted the claimant is "generally asymptomatic" and referred him back to primary care. Exhibit 14F. |
| December 2012 | | A cervical MRI showed cervical degenerative disc disease from C2-3 to C7-T1, with variable discopathy, neuroforaminal stenosis, and facet arthropathy. The MIR also showed no significant spinal stenosis, though it did reveal a left paracentral disc herniation with anterior cord impingement. Lumbar x-rays showed "mild to moderate degenerative disc disease from T12-L1 to L5-S1. Exhibit 7F. |
| May 2013 | | The claimant was examined by consultative physician, Harvinder Birk. On examination, Dr. Birk found spasm and tenderness in the cervical paraspinal and suboccipital muscles, with limited cervical range of motion. Strength was 5/5 in all extremities, tone was normal, and reflexes were 1+ and symmetrical. The claimant also had normal bilateral lower and upper extremity sensation and no other limitations in range of motions. Dr. Birk recommended nerve conduction and EMG studies, which ultimately showed no electrophysiologic evidence of right S1 or cervical radiculophathy. Exhibits 18F and 20F. |
| November 2013 | | The claimant was examined by consultative physician, Guy Corkill, M.D. On examination, the claimant "performed the maneuvers of the physical examination without significant difficulty." Objective signs showed no abnormalities, loss of strength, sensation, or range of motion. While there was reflex loss, otherwise the claimant's degenerative disc disease was asymptomatic. Exhibit 10F. |
| December 2013 | | The claimant complained of "neck pain with any prolonged vibratory exposure," increased by bending the head forward. On examination, there was no localized joint stiffness and there were no neurological symptoms. The claimant's neck showed no decrease in suppleness, though he did have some tenderness to palpation throughout the spine. The doctor noted that the claimant's symptoms were "disproportionate to injury" and derived from a "rough riding vehicle." Exhibit 11F. |

///

///

10

| | | |
|---|---|---|
| March 2014 | | Primary care notes indicate the claimant was able to perform a broad range of daily activities requiring flexibility and movement of the neck and spine. Specifically, plaintiff was able to "complete community errands, don/doff shirt/jacket, don/doff shows/socks, drive, get into/out of bathtub, get in and out of vehicle, reach for seatbelt, stand form [sic] a seated position, style hair, tuck in shirt, walk household distances, walk community distances, wash armpits, wash back, and wash hair." Exhibit 12F. |
| July 2014 | | On follow-up, Dr. Corkill ordered an EEG and MRI, both of which were "unremarkable and normal." Dr. Corkill recommended the claimant take up swimming and return in three months. There is no evidence the claimant heeded this advice. Exhibit 15F. |
| March 2015 | | The claimant complained of continued dull pain at the base of his neck, aggravated by "pushing, rotation, stress, turning head, and working." The claimant's physical examination was normal. Exhibit 19F. |
| June 2015 | | Treatment notes indicate the claimant was able to chop wood. Exhibit 19F. |

CAR 26-27.

Revisiting his argument regarding the ALJ's severity determination, plaintiff contends the ALJ's adverse credibility finding is also flawed because "the ALJ did not consider all impairments that should have been found at Step 2 (e.g., meningitis, blood pressure)." Plaintiff also argues the ALJ erred by failing to consider "extensive evidence of fatigue and dizziness. . . ." Next, plaintiff asserts the longitudinal record shows "post-meningitis sequelae that are ongoing and continuous. . . ." Next, plaintiff argues the ALJ erred by citing a one-time instance of failure to follow medical advice. Finally, plaintiff argues the ALJ erred in relying on activities of daily living because they "do not contradict the evidence of otherwise severe problems that he encountered in daily living and the performance of tasks in the relevant period."

Plaintiff's renewed Step 2 arguments are unpersuasive. As discussed above regarding the ALJ's severity analysis, the court finds the ALJ's determination is based on substantial evidence. Specifically, considering those impairments which have more than a minimal effect on plaintiff's ability to work, the ALJ found degenerative disc disease to be the only impairment as to which there is evidence of record meeting this standard. Again, evidence

plaintiff suffers from meningitis residuals does not satisfy plaintiff's burden of showing how such residuals impact his ability to work. In this regard, the court notes that plaintiff has not raised any arguments challenging the ALJ's evaluation of the medical opinions.

Turning to the specific reasons offered by the ALJ in support of her adverse credibility finding, the court finds plaintiff's remaining arguments unpersuasive because each reason is legally sufficient and supported by substantial evidence.

### 1. Longitudinal Record

At the outset, the court finds plaintiff's continued reference to meningitis residuals unavailing for the reasons discussed above. Turning to the longitudinal record more generally, the ALJ's detailed discussion clearly reflects objective findings inconsistent with plaintiff's allegation of total disability. For example, in November 2012, plaintiff presented at Mercy Medical Center with complaints of pain after "extensive truck driving." CAR 26 (citing Exhibit 14F). Physical examination was unremarkable, and the doctor noted plaintiff was "generally asymptomatic." Id. The ALJ was permitted to conclude plaintiff's subjective allegations are undermined by evidence he was driving extensively as well as evidence of an unremarkable examination. See Smolen, 80 F.3d at 1284; see also Carmickle, 533 F.3d at 1161.

Additionally, in November 2013 plaintiff was examined by Dr. Corkill, who noted plaintiff "performed the maneuvers of the physical examination without significant difficulty." CAR 26 (citing Exhibit 10F). Likewise, treating records reflect a normal examination in December 2013 despite complaints of neck pain with "prolonged vibratory exposure." Id. (citing Exhibit 11F). The doctor noted plaintiff's symptoms were "disproportionate to injury." Id. In March 2014, treatment notes reflect plaintiff was performing a wide range of daily activities inconsistent with total disability. See id. (citing Exhibit 12F). Specifically, the record indicates plaintiff was able to "complete community errands, don/doff shirt/jacket, don/doff shows/socks, drive, get into/out of bathtub, get in and out of vehicle, reach for seatbelt, stand form [sic] a seated position, style hair, tuck in shirt, walk household distances, walk community distances, wash armpits, wash back, and wash hair." Id. In March 2015, plaintiff's physical examination was once again normal. See id. at 27 citing Exhibit 19F). The ALJ did not err in citing this

additional evidence which also undermines plaintiff's credibility. See Smolen, 80 F.3d at 1284; see also Carmickle, 533 F.3d at 1161.

        2.       Failure to Follow Medical Advice

Plaintiff contends the ALJ erred by citing his failure to heed Dr. Corkill's advice to take up swimming because that was a one-time recommendation that does not indicate a pattern of refusing medical advice. While the court agrees that a one-time failure to heed medical advice does not show a pattern, the ALJ was nonetheless entitled to consider the fact in assessing plaintiff's credibility. See Smolen, 80 F.3d at 1284.

        3.       Activities of Daily Living

Plaintiff argues the activities of daily living cited by the ALJ do not constitute substantial evidence supporting the ALJ's adverse credibility finding because they "do not contradict the evidence of otherwise severe problems that he encountered in daily living and the performance of tasks in the relevant period." The court does not agree. The ALJ observed plaintiff's daily activities include the following: (1) yard work for his mother, including lawn mowing, weed eating, and watering, see CAR 27 (referencing plaintiff's hearing testimony); (2) extensive truck driving, see id. at 26 (citing Exhibit 14F); and (3) chopping wood, see id. at 27 (referencing Exhibit 19F). The ALJ properly relied on this evidence because the activities noted reflect physical functions that are transferable to a work setting, see Fair, 885 F.2d at 603, and are inconsistent with plaintiff's allegation of total disability, see Smolen, 80 F.3d at 1284.

    **C.**    **Residual Functional Capacity Finding**

At Step 4, the ALJ determined plaintiff has the residual functional capacity to perform medium work despite limitations resulting from plaintiff's medical determinable severe impairment of degenerative disc disease. See CAR 25-28. The ALJ did not find plaintiff can perform the full range of medium work. Rather, the ALJ concluded plaintiff's capacity for medium work is limited by the following restrictions: "no more than frequent climbing of ramps and stairs, stooping, and crouching." Id. at 25. The ALJ also found plaintiff must avoid concentrated exposure to extreme cold, excessive vibrations, and hazardous machinery. See id.

///

13

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3]

Once again, plaintiff argues the ALJ erred by "sweeping Mr. Newberry's meningitis residual under the rug at Step-2. . . ." Plaintiff also argues the ALJ's residual functional capacity assessment is flawed because the ALJ failed to consider non-exertional limitations related to "persistent fatigue." According to plaintiff:

> Indeed, the ALJ's failure to discuss the evidence of Mr. Newberry's persistent fatigue is particularly problematic as SSR 96-8p, requires the "'RFC assessment . . . include a discussion of the individual's abilities to do sustained work-related physical and mental activities on a regular and continuing basis.'" Evaluation of the disability criteria requires that the Commissioner assess the claimant's "ability to work on a sustained basis" and "[o]ccasional symptom-free periods – and even the sporadic ability to work." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998), citing *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (stating that in evaluating whether a claimant is disabled, the Commissioner must consider whether the claimant is unable to work on a "sustained" basis, and a claimant's occasional symptom-free period or the ability to work sporadically is not inconsistent with disability).; see also, *Gatliff v. Apfel*, 172 F.3d 690, 692 (9th Cir. 1999)("substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time.")

Next, plaintiff contends the ALJ's residual functional capacity is flawed "when focus is given to the full panoply of the requirements for medium work." Specifically, plaintiff cites Social

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Security Ruling 83-10, outlining the requirements of the "full range of medium work." Finally, plaintiff argues the ALJ's residual functional capacity analysis fails to account for evidence from primary care physicians, Drs. Williams, Rabinowitz, and Birk, as well as consultative examining physician, Dr. Corkill.

Plaintiff's arguments are unpersuasive.

1. Meningitis Residuals and Fatigue

For the reasons discussed several times throughout this opinion, plaintiff's references to symptoms from meningitis residuals and fatigue are unavailing absent evidence showing how these symptoms impact plaintiff's ability to work. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia, 751 F.2d at 1085.

2. Full Range of Medium Work (SSR 83-10)

Citing Social Security Ruling 83-10, which describes the requirements for the full range of medium work, plaintiff contends the ALJ's residual functional capacity finding is flawed "when focus is given to the full panoply of the requirements of medium work." This argument is inapposite because, as outlined above, the ALJ found plaintiff capable of less than the full range of medium work.

3. Drs. Williams, Rabinowitz, Birk, and Corkill

Though plaintiff does not raise any specific argument with respect to the ALJ's evaluation of the medical opinions, plaintiff argues the ALJ's residual functional capacity determination is flawed because she failed to consider records from Drs. Williams, Rabinowitz, Birk, and Corkill. According to plaintiff:

> In short, the RFC disregarded in their entirety each of Mr. Newberry's non-exertional limitations established by the administrative record both through his treating and examining physicians, his own testimony and the observations of others. First, the ALJ ignored and failed to summarize at all the records of Dr. Williams, Mr. Newberry's primary care physician from the time he was hospitalized due to meningitis, AR 386-387; treated him for at least the next two years recording significant impairments (AR 582 [chronic fatigue and mild chronic confusion], 608 [depression, postural limitations pain], 611 [cardiac evaluation follow up with history], 625 [fatigue and back pain], 640 [fatigue, postural limitations, degenerative disc disease, meningitis residual]); and, as late as April 25, 2013, still carried Mr. Newberry's meningitis residual as not fully resolved. AR 588. So too, the records and findings of Mr.

15

Newberry's next primary care physician, Dr. Rabinowitz, are essentially ignored or to the extent discussed are mined solely for nuggets unindicative of those records as a whole, records again replete with continued documentation of Mr. Newberry's non-exertional impairments such as fatigue, fever, malaise, night sweats, dizziness, joint pain/swelling and muscle weakness. Similarly, with Dr. Birk whose May 2015 findings of dizziness after meningitis in 2011, trouble with balance and coordination, wrist neuropathy and limitations to his range of motion were dismissed without clear and convincing reasons or discussion. See, AR 23, 25-28, 735. Indeed, the ALJ even ignored limitations found by the Commissioner's own consultative neurosurgeon, whose medical source statement found, Mr. Newberry "has problems sitting, standing or walking for any length of time and needs to get up and move around due to fatigue and some pain." AR 579. Such an examining physician medical source finding is wholly inconsistent with the ALJ's contention that Mr. Newberry was able to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday and frequent [6 hours in an 8 hour-day] lift or carry objects weighing up to 25 pounds. Because the ALJ's RFC determination is not adequately supported, remand is appropriate under 42 U.S.C. 405(g), Sentence Four.

As to Dr. Williams, plaintiff identifies various observations made by the doctor, such as chronic fatigue noted at CAR 582, depression, postural limitations, and pain noted at CAR 611, fatigue and back pain noted at CAR 625, fatigue, postural limitations, degenerative disc disease, and meningitis residuals noted at CAR 640, meningitis residuals noted at CAR 588. Plaintiff does not, however, identify any opinions expressed by Dr. Williams concerning the impact of these observations on plaintiff's ability to work. Similarly, plaintiff fails to identify any opinions rendered by Drs. Rabinowitz or Birk related to plaintiff's functional capacity. The ALJ did not err because residual functional capacity describes what a person can do despite limitations, see 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia, 751 F.2d at 1085, and plaintiff has not identified evidence describing how the doctors' records inform plaintiff's functional capabilities.

Finally, plaintiff argues the ALJ failed to account for limitations opined by consultative examining physician, Dr. Corkill. Referencing Dr. Corkill's November 26, 2013, report, see CAR 573-79, plaintiff notes the doctor's statement plaintiff "has problems sitting, standing or walking for any length of time and needs to get up and move around due to fatigue and some pain," id. at 579. According to plaintiff, the ALJ erred be ignoring this limitation. Plaintiff's argument, however, is belied by the ALJ's conclusion that Dr. Corkill's opinions are

16

entitled to little weight.  See CAR 28.  Contrary to plaintiff's assertion the ALJ ignored this evidence, the ALJ in fact considered and rejected it, and plaintiff does not explain how the ALJ erred in doing so.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 19) is denied;
2. Defendant's motion for summary judgment (Doc. 20) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  September 26, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE